IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**ST. PAUL COMMODITIES, INC.**                                                                                              **PETITIONER**

**v.**                                                                                                    **CIVIL ACTION NO. 1:24-cv-145-TBM-RPM**

**OLEO-X, LLC**                                                                                                                 **RESPONDENT**

## ORDER

Respondent Oleo-X, LLC, has moved to stay or, alternatively, to transfer this matter to the Southern District of New York, where a parallel proceeding is pending. Under the "first-to-file rule," this Court has the authority to decide where the merits of the parties' dispute should be heard. Because there is substantial overlap between this and the parallel New York case, and compelling circumstances do not warrant a transfer to that court, the Court denies Oleo's Motion to Change Venue [9]. Accordingly, the case will proceed in this Court, so the Court finds that Oleo's Motion to Stay [7] is moot.

### I. BACKGROUND AND PROCEDURAL HISTORY

In this action, Petitioner St. Paul Commodities, Inc., seeks to enforce its $16.7 million Arbitration Award arising out of its transaction with Oleo-X, LLC. St. Paul Commodities is a Minnesota corporation that "trades in fats and oils to market various products into the biofuel or animal feed industries." [21], p. 2. Oleo is an energy company based in Pascagoula, Mississippi,[1] that processes and pretreats renewable feedstock—animal fats and oils—to produce renewable

---

[1] Although Oleo has its physical location in Pascagoula, Mississippi, that does not make it a Mississippi citizen. "Rather, the citizenship of a LLC is determined by the citizenship of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Pursuant to Federal Rule of Civil Procedure 7.1, Oleo filed a lengthy Corporate Disclosure Statement averring the citizenship of its members. [29]. Having reviewed the Statement, the Court is satisfied that diversity of citizenship exists and that this Court has subject matter jurisdiction. No member of Oleo is a citizen of Minnesota, where St. Paul Commodities is incorporated and has its principal place of business. [1]; [28].

fuel. [8], p. 1. The parties executed two agreements relevant to their underlying dispute. *Id.* The first agreement was a "spot deal"[2] for St. Paul Commodities to deliver ten railcars of "yellow grease"[3] to Oleo in November 2022. *Id.* The second was a term agreement for St. Paul Commodities to provide weekly shipments of yellow grease through December 2023. *Id.* Oleo argues that the yellow grease provided by St. Paul Commodities was of a lower grade than required and contained foreign materials like solvents, cleaning agents, and waste products. *Id.* at p. 2. And Oleo further alleges that processing the yellow grease resulted in noxious odors, burst one of its tanks, and damaged its centrifuges. *Id.* As a result, Oleo refused to pay St. Paul Commodities for the deliveries of the yellow grease or accept the remaining deliveries under the parties' agreements. [21], p. 3.

On April 9, 2023, St. Paul Commodities initiated arbitration against Oleo for breach of contract, liability under an account stated, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and promissory and equitable estoppel. [1-1], pps. 8-12. The parties agreed that the Final Hearing before the Arbitration Panel would take place on February 12, 2024, in Chicago, Illinois. [21], p. 4. Less than two weeks before the Hearing, Oleo's counsel withdrew, and the Hearing was continued. *Id.* After Oleo obtained new counsel, the Final Hearing began on April 8, 2024, and concluded on April 10, 2024. *Id.* at p. 5. On May 10, 2024, the Panel issued its Award, finding in favor of St. Paul Commodities. *Id.* It ordered Oleo to pay $16.7 million to St. Paul Commodities by May 30, 2024. *Id.*

---

[2] "A spot contract is an agreement that enables you to buy and sell an asset at the current market rate, known as the spot price." Becca Cattlin, *What is a spot contract?*, IG (Nov. 9, 2020).

[3] Yellow grease is a type of renewable feedstock made up of animal fats and oils. [8], p. 2 n. 1.

St. Paul Commodities filed its Complaint [1] in this Court on May 13, 2024, petitioning the Court to affirm the Arbitration Panel Award. *Id.* And on June 4, 2024, Oleo filed a Petition to Vacate Arbitration Award (the "New York Action") in New York state court. *Id.* at p. 6. After filing its June 5, 2024, Answer in this case, Oleo also filed the pending Motion to Stay [7]. *Id.* The next day, Oleo filed the instant Motion to Change Venue [9]. *Id.* Then, on June 20, 2024, St. Paul Commodities removed the New York Action to the Southern District of New York. *Oleo-X LLC v. Saint Paul Commodities, Inc.*, No. 1:24-cv-04706-CM, 2024 WL 4277531, at *2 (S.D.N.Y. Sep. 24, 2024). There, St. Paul Commodities filed a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, alternatively, to transfer pursuant to 28 U.S.C. § 1404(a). *Id.* The Southern District of New York denied St. Paul Commodities' Motion to Dismiss upon finding venue to be proper under the American Fats and Oils Association's ("AFOA") Trade Rules and the Federal Arbitration Act ("FAA"). *Id.*[4]

Although the Southern District of New York found venue to be proper there, the court ultimately denied St. Paul Commodities' motion to transfer and stayed the proceedings pending the resolution of Oleo's Motion to Transfer [9] pending before this Court. *Id.* Applying the "first-to-file rule," the Southern District of New York found that St. Paul Commodities filed this action first, that the Mississippi and New York Actions are duplicative, and as a result, the Southern District of New York should defer to this Court to "decide which court will decide the matter on the merits." *Id.* at *4. The Southern District of New York also stated: "I believe the case ought to

---

[4] The parties do not dispute that their agreements were subject to the AFOA Rules. [8], p. 1; [21], p. 2. And Section 9 of the AFOA Trade Rules provides that New York City serves as the seat of AFOA arbitrations. The FAA states that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10. Thus, the Southern District of New York found venue proper in New York City, which is located in that District. *Oleo-X*, 2024 WL 4277531, at *2.

proceed in Mississippi, where Oleo is located, where the first action was taken with respect to the award, and where the award will have to be enforced if it is confirmed . . ." *Id.* at *5. This Court agrees. For the reasons set out below, the Motion to Change Venue [9] is denied, and the Motion to Stay Proceedings [7] is moot.

## II. MOTION TO CHANGE VENUE

In seeking to change venue, Oleo first argues that St. Paul Commodities is barred from bringing its action in this Court due to Mississippi's "door closing statute." The Court will begin its analysis there, before determining whether venue is proper in this Court. Then, the Court will determine whether the "first-to-file rule" gives this Court the authority to decide where this case will be heard on the merits. Finally, the Court will analyze whether compelling circumstances are present to determine if this Court will retain the case.

### A. St. Paul Commodities is authorized to bring this action under Mississippi's Door Closing Statute

Because St. Paul Commodities is a Minnesota corporation that has not registered with the Mississippi Secretary of State to do business in Mississippi, Oleo argues that St. Paul Commodities is barred under Mississippi's "door closing statute" from enforcing the Arbitration Award in this Court. Mississippi Code Section 79-4-15.01 *et seq.* is known as the door closing statute because it "denie[s] access to Mississippi courts" to companies that do not obtain a certificate of authority from the Secretary of State. *Fulgham v. Morgan & Morgan, PLLC*, 363 So. 3d 980, 985 (Miss. Ct. App. 2019); *see* MISS. CODE ANN. § 79-4-15.02 ("A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority.").

4

A certificate of authority is not required to maintain an action in a Mississippi court, however, if the foreign corporation is not "transacting business." *Miss. Ins. Guar. Ass'n v. Harkins & Co.*, 652 So. 2d 732, 737 (Miss. 1995). The door closing statute provides a long list of what activities do not qualify as "transacting business."[5] Among these is "[t]ransacting business in interstate commerce." Miss. Code Ann. § 79-4-15.01(b)(11). Indeed, "[i]t is well settled that a state cannot require a foreign corporation to obtain a certificate to do business if that corporation is engaged solely in interstate sales." *Barbee v. United Dollar Stores, Inc.*, 337 So. 2d 1277, 1279 (Miss.

---

[5] (a) A foreign corporation may not transact business in this state until it obtains a certificate of authority from the Secretary of State.

(b) The following activities, among others, do not constitute transacting business within the meaning of subsection (a):

(1) Maintaining, defending or settling any proceeding;
(2) Holding meetings of the board of directors or shareholders or carrying on other activities concerning internal corporate affairs;
(3) Maintaining bank accounts;
(4) Maintaining offices or agencies for the transfer, exchange and registration of the corporation's own securities or maintaining trustees or depositories with respect to those securities;
(5) Selling through independent contractors;
(6) Soliciting or obtaining orders, whether by mail or through employees or agents or otherwise, if the orders require acceptance outside this state before they become contracts;
(7) Creating or acquiring indebtedness, mortgages and security interests in real or personal property;
(8) Securing or collecting debts or enforcing mortgages and security interests in property securing the debts;
(9) Owning, without more, real or personal property;
(10) Conducting an isolated transaction that is completed within thirty (30) days and that is not one in the course of repeated transactions of a like nature;
(11) Transacting business in interstate commerce;
(12) Being a shareholder in a corporation or a foreign corporation that transacts business in this state;
(13) Being a limited partner of a limited partnership or foreign limited partnership that is transacting business in this state;
(14) Being a member or manager of a limited liability company or foreign limited liability company that is transacting business in this state.

Miss. Code Ann. § 79-4-15.01.

1976) (finding that such a limitation would violate the Commerce Clause) (citing U.S. CONST. ART. I, § 8, cl. 3).

The question before the Court is whether St. Paul Commodities engaged only in interstate commerce when it shipped the yellow grease from Minnesota to Oleo in Mississippi, or whether its conduct was "sufficiently intrastate," requiring a certificate of authority. *See FC Meyer Packaging, LLC v. Converting Alternatives Int'l, LLC*, No. 2:16-cv-80-KS-MTP, 2016 WL 6834011, at *2 (S.D. Miss. Nov. 18, 2016) (finding that where corporations from Connecticut and Michigan contracted to purchase a machine from Minnesota and install it in Mississippi, this was interstate commerce that did not require a certificate of authority); *see also XYOQUIP, Inc. v. Mims*, 413 F. Supp. 962 (N.D. Miss. 1976) (A foreign corporation is not deemed to be doing business in Mississippi in matters pertaining to the transaction of business in interstate commerce.); *Ivor B. Clark Co. of Texas, Inc. v. Southern Business & Indus. Development Co.*, 399 F. Supp. 824 (S.D. Miss. 1974) (Neither a Louisiana mortgage brokerage firm nor a Texas mortgage service and placement corporation were required to procure a certificate of authority to recover a brokerage fee, as the transaction at issue fell within the interstate commerce exception.); *Cone Mills Corp. v. Hurdle*, 369 F. Supp. 426 (N.D. Miss. 1974) (A foreign corporation was participating in interstate commerce, and not doing business in Mississippi under the door closing statute, when it negotiated contracts with cotton producers in Mississippi for the delivery of cotton beyond state lines, even when the cotton was transported within Mississippi first before leaving the state.); *Fred Hale Machinery, Inc. v. Laurel Hill Lumber Co., Inc.*, 483 F.2d 58 (5th Cir. 1973) (A Louisiana company that negotiated in Louisiana and Mississippi to manufacture components for a Mississippi sawmill, using components from manufacturers in Mississippi and Georgia, was not precluded from bringing suit

in Mississippi, even though the company sent employees to Mississippi to assemble and install the equipment.).

The Court finds that St. Paul Commodities' transaction with Oleo—the shipment of yellow grease from Minnesota to Mississippi, across state lines—was plainly interstate commerce. And by "[t]ransacting business in interstate commerce," Oleo was not "transacting business" in Mississippi in a such as manner that would require it to have a certificate of authority to maintain this action in a Mississippi federal court. Accordingly, the record contains no evidence, and Oleo does not allege, that St. Paul Commodities conducted any business in Mississippi other than the transaction underlying the parties' dispute. *See FC Meyer Packaging*, 2016 WL 6834011, at *2. Without an allegation that St. Paul Commodities has engaged in business in Mississippi other than its interstate transaction with Oleo, the Court will not bar it from proceeding with this action. Having disposed of this preliminary issue, the Court turns now to decide whether venue is proper in this district.

### B. Venue is proper in the Southern District of Mississippi

Oleo does not dispute that venue is proper in this Court, but out of an abundance of caution, and since there is a parallel action in the Southern District of New York, the Court will now determine whether this Court is a proper venue. St. Paul Commodities pleads venue under the general venue statute—Section 1391—as opposed to under Section 9 of the FAA, which provides for the venue of actions to confirm arbitration awards. In *Cortez Byrd v. Bill Harbert Const. Co.*, the Supreme Court held that the FAA's venue provisions are permissive, allowing the general venue statute to remain applicable in actions involving arbitration awards. *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 198, 120 S. Ct. 1331, 146 L. Ed. 2d 171 (2000). And under the general venue statute, a civil action may be brought in:

7

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Indeed, venue is "clearly proper" in the district where the contract was performed, under Section 1391(b)(2). *See Cortez Byrd*, 529 U.S. at 198 (holding that an action to vacate or modify an arbitration award that was brought in the Southern District of Mississippi, where the underlying contract was performed, could proceed in that district, even though a parallel action was filed in the Northern District of Alabama, where the arbitration award was made).

Here, the parties' underlying contract called for St. Paul Commodities to ship the yellow grease to Oleo in Mississippi. Not only was delivery performed in Mississippi, but Oleo's alleged discovery that the yellow grease was defective also occurred in Mississippi after that delivery. That alleged discovery is one of the most substantial events that lead to the parties' arbitration of this dispute. Thus, because the "substantial part of the events or omissions giving rise to the claim occurred" in Mississippi, venue is proper in this district. 28 U.S.C. § 1391(b)(2). Since venue is proper here, this Court exercises its authority "under principles of deference to the court of first filing" to determine where the merits of the case will be heard. *See Cortez Byrd*, 529 U.S. at 198.

### C. The first-to-file rule

The first-to-file rule dictates that "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)

(citations omitted). Based on "principles of comity and sound judicial administration," the purpose of the rule is to avoid duplication and seek uniform results. *Id.*; *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985). "Once the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] no longer up to the [second-filed court] to resolve the question of whether both should be allowed to proceed." *Cadle*, 174 F.3d at 605-06 (quotation omitted). The court that was first seized of the controversy should determine which court will hear the merits of the case. *Id.* at 606.

"[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Id.* (citing *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997)). The first-filed court must determine where a "case should, in the interests of sound judicial administration and judicial economy, proceed." *Cadle*, 174 F.3d at 606. And although the court of second-filing should first determine whether there is a likelihood of substantial overlap, "the determination of whether there actually was substantial overlap requiring consolidation of the two suits . . . belong[s] to the [first-filed court]." *Mann Mfg. Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). If the two cases substantially overlap, "[a] party can only avoid application of the first-to-file rule by demonstrating the presence of 'compelling circumstances' . . . ." *White v. Peco Foods, Inc.*, 546 F. Supp. 2d 339, 342 (S.D. Miss. 2008) (citing *Mann Mfg.*, 439 F.2d at 407).

Pursuant to the rule, this Court proceeds by first determining whether there is substantial overlap between this case and the New York Action that would allow the case to proceed here. Second, the Court will analyze whether Oleo has shown that compelling circumstances warrant

this Court transferring the case to the Southern District of New York to proceed there. The Court considers each issue in turn.

1. **Substantial Overlap**

"The first-to-file rule 'does not [] require that cases be identical,' but merely that there is a 'substantial overlap' in issues and parties." *White*, 546 F. Supp. at 342 (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)). "Factors relevant to substantial overlap include whether the 'core issue' in each case is the same and whether 'much of the proof adduced . . . would likely be identical.'" *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 631 (W.D. Tex. 2018) (citing *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011)). "Courts also consider the extent to which the cases involve the same parties." *Id.* (citing *Save Power*, 121 F.3d at 950-51).

Here, there is substantial overlap between this case and the New York Action. The two cases involve the same core issue—whether the Panel Award in favor of St. Paul Commodities will be allowed to stand. *See* [8], p. 6 (stating that both actions "turn on the same substantive issues"); [22], p. 12 ("There is no dispute that this action and the New York Action involve substantially similar issues . . ."). And any additional proof will be identical. Moreover, the same two parties are litigating the same Arbitration Award in both actions. The only difference is that in the instant action, St. Paul Commodities seeks to confirm the Panel Award, while in the New York Action, Oleo attempts to vacate the Award.

Unless Oleo can persuade this Court that compelling circumstances support a transfer to New York for further proceedings there, the Court is poised to consolidate the two cases for a decision on the merits in the Southern District of Mississippi. *See Sutter Corp.*, 125 F.3d at 920 (holding that where one party filed a motion to vacate an arbitration award in federal court in Oklahoma and the other party later filed a motion to confirm the same award in Texas, the

Oklahoma court should decide whether to consolidate the actions for proceedings in Oklahoma); *see also P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 865 (10th Cir. 1999) (affirming the arbitration award of the Oklahoma court after it consolidated the Oklahoma and Texas actions).

### 2. Compelling Circumstances

"The first to file rule should not be applied in a rigid and mechanical fashion; however in the absence of compelling circumstances which warrant keeping the action in the second filed forum, courts should exercise their discretion to defer to the court in which the action was initially filed." *Fat Possum Recs., Ltd. v. Capricorn Recs., Inc.*, 909 F. Supp. 442 (N.D. Miss. 1995) (citations omitted). But the Fifth Circuit has not provided a test for what "precisely constitutes compelling circumstances." *Hart*, 290 F. Supp. 3d at 633. Indeed, the law remains unsettled as to how courts should analyze whether compelling circumstances exist in a first-to-file analysis. *Id*. In *Mission Insurance Co. v. Puritan Fashion Corp.*, 706 F.2d 599 (5th Cir. 1983), however, the Fifth Circuit endorsed the use of the Section 1404(a) convenience factors while applying the first-to-file rule. *Id*. at 602-603 (affirming the district court's dismissal of a first-filed case in favor of a second-filed case based on the convenience factors) (citing 28 U.S.C. § 1404(a)). At least one other circuit has done the same. *See New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (recognizing an exception to the first-to-file rule when the balance of convenience factors favors the second-filed case). In the absence of clear Fifth Circuit precedent, this Court is persuaded, like other courts in this circuit, that the Section 1404(a) convenience factors provide the most prudential way to determine whether compelling circumstances support the transfer of this case to the Southern District of New York. *See Hart*, 290 F. Supp. 3d at 633-34 (considering the factors in the court's compelling circumstances analysis); *Gonzalez v. Unitedhealth Group, Inc.*, No. 6:19-cv-00700-ADA, 2020 WL 2992174, at *4 (W.D. Tex. June 3, 2020) (citing *Hart* and

finding the convenience factors were not adequately briefed to support a showing of compelling circumstances).[6] Those convenience factors are the several private and public interest factors which the Fifth Circuit has set forth for courts to determine whether a party has met its burden for transfer under Section 1404(a). *In re Clarke*, 94 F.4th at 509.

The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (internal quotation marks omitted) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)). The public interest factors include: "(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023)). Because the parties agree that the private interest factors do not apply,[7] the Court will not address them and treats them as neutral. Thus, the Court proceeds to its analysis of the public interest factors, taking each in turn.

---

[6] *Igloo Prods. Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 218 (S.D. Tex. 1990) ("In determining whether this case presents compelling circumstances, this Court might also look by analogy to the considerations that govern transfer of venue for forum non conveniens under 28 U.S.C. § 1404(a).") (citing *Superior Savings Association v. Bank of Dallas*, 705 F. Supp. 326, 330-31 (N.D. Tex. 1989); *Merle Norman Cosmetics v. Martin*, 705 F. Supp. 296, 298-301 (E.D. La. 1988)); *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, MDL No. 1446, 2008 WL 4166172, at *15, 19 (S.D. Tex. Aug. 29, 2008) (citing *Igloo* and considering the convenience factors in its first-to-file analysis).

[7] Oleo concedes, and St. Paul Commodities does not dispute, that the private interest factors are inapplicable in this case. *See* [27], pps. 3-4. ("Here, given the nature of the parties' competing petitions the private interest factors—which focus on how cases are tried and how proof is developed—are inapplicable."); [21], p. 8 ("[N]one of the 'private interest factors' are applicable to the parties' competing petitions.").

### a. Court congestion

The first public interest factor is "the administrative difficulties flowing from court congestion." *In re Volkswagen*, 545 F.3d at 315. "This factor normally weighs against transfer when the 'case appears to be timely proceeding to trial before the' [current] district." *In re Tiktok*, 85 F.4th at 363 (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 631 (5th Cir. 2022)). Oleo argues that the Administrative Office of U.S. Courts statistics suggest that the Southern District of New York "moves civil cases on a more expedited basis than the Southern District of Mississippi." [27], p. 4.

While some numbers may indicate that one district is busier than the other in some aspects, both districts are busy, but neither is congested. For the 12-month period ending on March 31, 2024, the Southern District of Mississippi had 611 lawsuits and 71 criminal felony cases per active judgeship. "U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics," ADMINISTRATIVE OFFICE OF THE U.S. COURTS (Mar. 31, 2024), at p. 5.[8] In contrast, the Southern District of New York had 407 lawsuits and 30 criminal felony cases per active judgeship in that span. *Id.* at p. 2. In the Southern District of Mississippi, the percentage of civil cases over three years old is 2.2 percent, while 26.8 percent of cases in the Southern District of New York are over three years old. *Id.* at pps. 2, 5. The median time from filing to disposition in a civil case in the Southern District of Mississippi is 9.5 months. *Id.* at p. 5. In the Southern District of New York, it is 6.2 months. *Id.* at p. 2. From filing to trial in a civil case, the median time in this District is 20.3 months. *Id.* at p. 5. It is 43.3 months in the Southern District of New York. *Id.* at p. 2. Additionally,

---

[8] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2024.pdf

the Administrative Office recently named both districts among the "most productive federal courts in the country."

To be sure, this Court's colleague in New York has a reputation of moving cases quickly. Roughly three months after St. Paul Commodities filed its motion to dismiss in the Southern District of New York, the court issued its opinion. *See Oleo-X*, 2024 WL 4277531, at *2. It was prudent for this Court to wait for the Southern District of New York to issue its ruling first, given the procedural aspects of this case and the potential for conflicting rulings. This Court previously gave the parties the option for a hearing on this matter, offering an earlier ruling from the bench in lieu of a written opinion. The parties declined.

This case is proceeding in a normal fashion. Upon entry of this Order, the Court will set a briefing schedule and a status conference in order to get a preliminary understanding of the issues that the parties may raise and the urgency which the parties may have for an expedited ruling. It is difficult to overturn an arbitration award. The Court will not tolerate any intentional delays by a party in seeking to avoid the Court's confirmation, modification, or vacatur of the present Award. *See Affordable Care, LLC v. McIntyre*, No. 1:21-cv-85-TBM-RPM, 2022 WL 989147 (S.D. Miss. Mar. 31, 2022), *aff'd sub nom. Affordable Care, L.L.C. v. McIntyre*, No. 22-60245, 2023 WL 3620755 (5th Cir. May 24, 2023) (finding that Rule 11 prohibits counsel from "fil[ing] a pleading, motion, or other paper intended to delay proceedings . . .") (citing FED. R. CIV. P. 11) (remaining citations omitted). Because Oleo has not shown that this case is proceeding in an untimely way in this District, or that this District is in any way congested, this factor does not support transfer and is neutral.

### b. Local interest

The second public interest factor is "the local interest in having localized interests decided at home." *In re Volkswagen*, 545 F.3d at 315. In assessing this factor, a court must determine whether there are "significant connections between a particular venue and the events that gave rise to a suit." *In re Tiktok*, 85 F.4th at 364 (internal quotation marks omitted) (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022)). Accordingly, "the place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (quotation omitted).

The Southern District of Mississippi has a local interest in having this localized interest decided at home. The underlying dispute involves payment for goods shipped to a Mississippi LLC's Pascagoula location. Moreover, if St. Paul Commodities' Arbitration Award is upheld, then its judgment would be enforced in this jurisdiction.

Although Oleo argues that the "underlying arbitration took place in New York," that is not entirely accurate. Under Section 9 of the AFOA Rules, New York City serves as the seat of AFOA arbitrations. *Oleo-X*, 2024 WL 4277531, at *2. But the arbitration did not actually take place there. [21], p. 4. The parties originally agreed to arbitrate in Chicago, but after a change in Oleo's counsel, the Hearing was conducted virtually on April 8-10, 2024. *Id.* at pps. 4-5. Aside from the AFOA Rules provision making New York City the seat of the arbitration, New York has no other connection to this dispute. Where New York has nothing more than a nominal interest in this suit, the local interests involving Oleo weigh against transfer.

### c. Familiarity with governing law

The third public interest factor is "the current district's familiarity with the law that will govern the case." *In re Tiktok*, 85 F.4th at 365 (internal quotation marks omitted) (quoting *In re Volkswagen*, 545 F.3d at 315). "This factor most 'commonly applies where the destination venue is

15

in a different State—in which case that State's familiarity with the applicable law would be especially probative to the transfer analysis.'" *Id.* (quoting *Planned Parenthood Fed'n of Am.*, 52 F.4th at 632.

Oleo argues that New York law governed the arbitration and that therefore, New York is the proper forum for this proceeding. [8], p. 6. But as St. Paul Commodities correctly points out, the review of the Arbitration Award by this Court would not involve New York law because the Court has "no authority to review the merits of the Final Award." [21], p. 8 n. 4; *Kemper Corp. Servs., Inc. v. Computer Scis. Corp.*, 946 F.3d 817, 823 (5th Cir. 2020) ("[T]he courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his.") (citation omitted). Rather, 9 U.S.C. Sections 10-11, which govern the vacatur, modification, or correction of arbitration awards, apply to this action. And this Court and the Southern District of New York are "equally capable of applying" the FAA, a federal law.[9] *In re Tiktok*, 85 F.4th at 365 (internal quotation marks omitted) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013)). Thus, this factor is neutral.

    d.   **Avoiding conflict of laws**

The fourth public interest factor is "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Tiktok*, 85 F.4th at 366 (alteration in original) (internal quotation marks omitted) (quoting *In re Volkswagen*, 545 F.3d at 315). Oleo argues that the "Panel's application of New York law to the underlying dispute . . . lies at the heart" of Oleo's attempt to vacate the Arbitration Award. [8], p. 7. And Oleo further argues that under New York

---

[9] The parties agreed, in their Hearing and Scheduling Order, that the applicable law in the arbitration would be the AFOA's Arbitration Rules and the FAA. [18-1], p. 10.

16

law, an arbitration award may be vacated in a New York state court "where the arbitration is pending." *Id.* at pps. 6-7 (citing NY CPLR § 7502(a)(i)). These arguments fail for two reasons.

First, under the FAA, federal courts are limited to a narrow review of arbitration awards. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008). In accordance with the Supreme Court's decision in *Hall Street*, the four grounds listed in Section 10 of the FAA[10] are the exclusive means by which a party can vacate an arbitration award. *Citigroup Global Mkts., Inc. v. Bacon*, 562 F. 3d 349, 352 (5th Cir. 2009). None of these four grounds would require the Court to review the underlying Arbitration Award under New York law. Instead, the FAA, a federal law, governs. And as this Court found above, this Court and its fellow court in the Southern District of New York are both just as capable of applying the FAA.

Second, the New York arbitration statute which Oleo cites to will not apply in federal court over the federal venue statute. St. Paul Commodities asserts diversity jurisdiction, and the Fifth Circuit has held that the federal general venue statute is controlling over a state venue statute under the *Erie* doctrine. *See Brown v. Pyle*, 310 F.2d 95, 98 (5th Cir. 1962) ("Congress has established the venue of federal courts in diversity of citizenship cases which will prevail over the venue provisions of a state [ ] statute.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188

---

[10] According to Section 10 of the FAA, an award can be vacated:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudice; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

(1938)). Because the New York statute is inapplicable, it does not conflict with another law at issue in this case. Therefore, this factor is also neutral.

Having found that none of the factors weigh in favor of transfer, one weighs against, and the rest are neutral, Oleo has not convinced this Court that compelling circumstances warrant a transfer to the Southern District of New York. The Court will instead exercise its inherent authority under the first-to-file rule to retain this case for further proceedings in this Court. Upon transfer of the New York Action to this Court, the Court will make a determination about consolidating the two cases.[11]

### III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Oleo's Motion to Stay [7] is MOOT.

IT IS FURTHER ORDERED AND ADJUGED that Oleo's Motion to Change Venue [9] is DENIED.

THIS, the 27th day of February, 2025.

_____
TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE

---

[11] As the court of first filing, this Court may have the authority to consolidate this case and the New York Action. *See Mann Mfg.*, 439 F.2d at 408; *Cadle*, 174 F.3d at 606; *Sutter Corp.*, 125 F.3d at 920. But at this juncture, neither party has moved for consolidation of the cases. The Court's colleague in New York ordered that within three business days of this Court's instant decision, St. Paul Commodities must submit a letter to the Southern District of New York with this decision attached. *Oleo-X*, 2024 WL 4277531, at *6. And "[i]f [the case] remains in Mississippi, I will be sure that the file in this matter is transferred to Mississippi forthwith." *Id.*